## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. SEALE & JONES.*
### (No. 8716.)

(Court of Civil Appeals of Texas. Dallas. Dec. 16, 1922. Rehearing Denied Feb. 3, 1923.)

**1. Novation ☞4 — Substitution of new contract.**

A novation exists where, by mutual consent and on sufficient consideration, the parties to an existing contract, intending to extinguish it, substitute therefor a new one, inconsistent with it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Novation.]

**2. Carriers ☞219(1)—Acceptance of new bill of lading from connecting carrier is not a novation.**

Where a shipper of live stock over connecting lines received from the second connecting carrier a new bill of lading covering the shipment over the connecting line, as required in order to obtain his drover's pass, his acceptance did not establish a novation superseding the original contract for through shipment, since the initial carrier was not a party to the new bill of lading, there was no mutual dissolution of the old contract, and no consideration therefor, except the receipt of the drover's pass which, under Vernon's Ann. Civ. St. Supp. 1922, art. 731, was an insufficient consideration.

**3. Carriers ☞219(5)—Acceptance of bill of lading from connecting carrier held not to discharge initial carrier.**

The acceptance by a shipper of live stock from a connecting carrier, to whom the shipment was delivered by the initial carrier while still within the state, of a new bill of lading did not discharge the original contract with the initial carrier for the through interstate shipment, where the initial bill of lading was for the entire journey, and the freight charges of both carriers were paid to the terminal carrier at destination, so that the initial carrier was liable for injury to the stock during transportation by the terminal carrier under Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732, and the Carmack and Cummins Amendments to the Interstate Commerce Act (U. S. Comp. St. §§ 8604a, 8604aa).

**4. Carriers ☞218(3)—Requirement of notice of claim for damages within 120 days is reasonable.**

The provision of a bill of lading requiring the shipper to give notice of his claim for damages within 120 days as a condition precedent to any right of action thereon was reasonable and one which the courts will enforce under Rev. St. art. 5714.

**5. Evidence ☞158(29) — Written notice of claim against carrier admissible as best evidence to show notice given.**

Where a carrier denied that notice of claim had been given, thereby placing on the shipper the burden of proving such notice, and the shipper introduced the best evidence he had of such notice, the written notice itself, the carrier's objection to the introduction of the notice in evidence was properly overruled.

**6. Interest ☞39(1)—Runs from date at which jury fixed damages.**

If it appears from a verdict that the sum fixed by the jury is clearly the amount of the damage on the date of the injury, interest should run from that date, but if the verdict shows the sum was the damage at the time of the finding or if it is uncertain at what date the damage was the amount found by the jury, the interest should run from the date of the judgment and not from the date of the injury.

**7. Interest ☞39(1)—Special findings by jury held to show damage was assessed as of time it occurred.**

Special findings by the jury as to the value of live stock on the date of delivery by the carrier and the value they would have been if they had arrived in an undamaged condition, showing that the sum allowed as damages was the difference between such values on that date, clearly establishes that the damages were fixed as of the date of the injury, so that the shippers were entitled to interest thereon from such date.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Suit by Seale & Jones against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Richard Mays, of Corsicana, for appellant.

H. E. Wassell and Callicutt & Johnson, all of Corsicana, for appellees.

SERGEANT, C. J. This case deals with the liability of a common carrier for injury to live stock in transit. At common law a carrier making a shipment over its own and connecting lines was liable for injury thereto in transit unless by a provision in its bill of lading or elsewhere its liability was restricted to damage occurring on its own line. By an almost universal practice among railroads, a custom grew up of inserting in all their bills of lading a provision limiting the liability of such carrier to loss or damage occurring on its own particular line, thereby contracting away the liability as it had existed at common law. Information as to where the loss occurred was almost always exclusively within the knowledge of the carrier, while the shipper, knowing only that the injury occurred somewhere on one of the railway lines between the point of origin of the shipment and its destination, was at a tremendous disadvantage in trying to collect his claim. A suit against the initial carrier failed, if the latter could show delivery in good condition to its next connecting carrier. A

suit against the terminal carrier failed if the latter could show delivery in the same condition as when received from the preceding connecting line. To grant relief to the shipper and to give the carrier whom the shipper chose to sue an adequate remedy by which it could recover the loss from the carrier actually at fault, the Twenty-Fourth Legislature of Texas in 1895, on page 186 of its acts, passed what became articles 331a and 331b of the Revised Statutes 1895, and which read as follows:

"Art. 331a. All common carriers over whose transportation lines, or parts thereof, any freight, baggage or other property received by either of such carriers for through shipment or transportation by such carriers between points in this state on a contract for through carriage recognized, acquiesced in or acted upon by such carriers shall, in this state, with respect to the undertaking and matter of such transportation, be considered and construed to be connecting lines, and be deemed and held to be the agents of each other, each the agent of the others, and all the others the agents of each, and shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy through transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers; and in any of the courts of this state any through bill of lading, waybill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for such through shipment or transportation, shall constitute prima facie evidence of the subsistence of the relations, duties and liabilities of such carrier as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carriers, or either of them."

"Art. 331b. For any damages for injury or damage to or loss or delay of any freight, baggage or other property sustained anywhere in such through transportation over connecting lines, or either of them, as contemplated and defined in the next preceding article of this law, either of such connecting carriers which the person or persons sustaining such damages may first elect to sue in this state therefor shall be held liable to such person or persons and such carrier so held liable to such person or persons shall be entitled in a proper action to recover the amount of any loss, damage or injury it may be required to pay such person or persons from the carrier through whose negligence the loss, damage or injury was sustained, together with costs of suit."

These articles underwent a slight amendment by the Thirty-Sixth Legislature of 1919 in sections 1 and 2 of chapter 165 of its acts. They are now known as articles 731 and 732 of the Revised Statutes (Vernon's Ann. Civ. St. Supp. 1922, Arts. 731, 732), and read as follows:

"Art. 731. All common carriers in this state, over whose transportation lines, or parts thereof, is transported any freight, baggage or other property received by either of such carriers for shipment or transportation between points in this state, or a contract for carriage recognized, acquiesced in, or acted upon by such carrier shall, with respect to the undertaking and matter of such transportation be considered and construed to be connecting lines; and such lines shall be deemed and held to be agents of each other, each the agent of the others, and all the others the agents of each, and shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy transportation thereof from point of shipment to destination; and such contract as to the shipper, owner or consignee of such property shall be deemed and held to be the contract of each of such common carriers. The provisions of this act shall apply whether the routine of such freight, baggage or other property be chosen by the owner or his agents, or by the initial carrier to whom such property is delivered and in any suit brought hereunder, the rights, duties, liabilities of the parties shall be determined by the initial contract executed by and between the owner, shipper or his or her duly authorized agents and the initial carrier, unless it be proved that a subsequent contract supported by a valuable consideration moving to the owner or shipper, in addition to that of the initial contract, was executed by such owner, shipper or his or their duly authorized agents with a subsequent connecting carrier handling the shipment, and the transportation of a caretaker shall not be deemed to be such valuable consideration. In any of the courts of this state, any bill of lading, waybill, receipt, check or other instrument issued by either of such carriers, or other proof showing that either of them has received such freight, baggage or other property for shipment or transportation, shall constitute prima facie evidence of the subsistence of the relations, duties and liabilities of such carrier as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carrier, or either of them and any stipulation contained in any contract contrary to any of the provisions of this act shall be void."

"Art. 732. For any damage for injury or damage to, or loss or delay of, any freight, baggage or other property sustained anywhere during the transportation over connecting lines or either of them, as contemplated and defined in the next preceding article of this chapter, either or all of such connecting carriers as the person or persons sustaining such damage may elect to sue therefor in this state, shall be held liable to such person or persons."

But as commerce grew and trade extended itself beyond the confines of the state it was found that the act of 1895 granted only partial relief to the shipper, in that its provisions could not extend to a shipment between the states, even though the loss occurred within the borders of Texas. The act governed only intrastate shipments, those be-

ginning and ending in Texas, and had no application to those from one state into another, known as interstate. The same situation existed as to most of the other states in the Union. Accordingly, on June 29, 1906, Congress, as a regulation of interstate commerce, enacted the Carmack Amendment to the Hepburn Bill, now found in U. S. Compiled Statutes, §§ 8604a and 8604aa, the pertinent portions of which read:

"Sec. 8604a. That any common carrier, railroad, or transportation company * * * receiving property for transportation from a point in one state * * * to a point in another state * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, * * * and no contract, receipt, rule, [or] regulation * * * shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; provided, * * * that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law. * * *

"Sec. 8604aa. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

The interpretation of this act by the courts revealed some imperfections, so, for the purpose of strengthening and extending this law, Congress, on March 4, 1915, passed the First Cummins Amendment to the act which is found in U. S. Compiled Statutes, § 8604a, that part relevant to this inquiry reading:

"Sec. 8604a. Any common carrier, railroad, or transportation company subject to the provisions of this act receiving property for transportation from a point in one state or territory or the District of Columbia to a point in another state, territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one state, territory, or the Distict of Columbia to a point in another state or territory or from a point in a state or territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly in a territory shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void."

Under the construction of these various acts by the courts, the initial carrier, the terminal carrier, and all intermediate connecting carriers of a shipment originating in Texas, whether interstate or intrastate, are liable to the shipper for any loss occurring anywhere on the line of a through shipment; and such shipper may recover the entire amount of the loss from any of such carriers, without regard to where the loss occurred, and whether the bill of lading limits liability or not.

In the case before us appellee W. F. Seale, a partner of B. B. Jones, on October 19, 1917, delivered to appellant, St. Louis Southwestern Railway Company of Texas, at Kerens, Tex., a shipment of animals consisting of horses, mules, and colts in good condition, for transportation over its own and connecting lines of railway from Kerens, Tex., to Keithville, La. A bill of lading was issued and signed by both shipper and carrier, which provided among other things: That the carrier would transport the shipment "from Kerens, Tex., to Big Sandy, Tex., en route to Keithville, La.; that the liability of the St. Louis Southwestern Railway Company of Texas in respect to said stock and under this contract is limited to its line of railway and will cease, and its part of this contract will be fully performed upon delivery or tender to its next connecting carrier;" and that within 120 days shipper would give written notice to the carrier of any claim for injury to the stock en route as a condition precedent to any right of action under said shipment. As a part of the contract between shipper and carrier, a drover's pass was issued to the shipper for the pur-

pose of having him ride with the stock and feed, water, and care for them in transit. The shipment moved safely and in a reasonable time from Kerens to Big Sandy, where the car in which the animals were loaded was transferred to the connecting line of the Texas & Pacific Railway Company, the animals inside still being in good condition. But, as a condition precedent to the right of the shipper to accompany the animals further, the agent of the Texas & Pacific Railway Company at Big Sandy, who was also agent for the St. Louis Southwestern Railway Company of Texas there, required him to sign a new bill of lading which it issued, providing for transportation of the stock from Big Sandy, Tex., over its own line of railway to Keithville, La. There was no consideration for the new bill of lading other than the issuance of the second drover's pass. When the shipment reached Longview it was unloaded in order that the animals, who were in good condition at that time also, might undergo the Mallein test prescribed by the Louisiana State Sanitary Board as a prerequisite to their admission into that state. The shipper left the animals at Longview and continued on the train to Keithville, where he learned that there were no pens for unloading cattle at such place, and there agreed with the carrier to transport the animals a short distance further to Gloster. On October 24, 1917, the stock reached Gloster in a very badly damaged condition. They were there unloaded, and the shipper paid to the Texas & Pacific Railway Company the entire amount of the freight due. Appellee, at the time he unloaded the animals and paid the freight, complained of the injuries to G. R. Patterson, agent of the Texas & Pacific Railway Company at Gloster, giving him an oral detailed report of the damage, and on the same day the said G. R. Patterson wrote a letter to his general freight agent at Dallas, Tex., reporting the injuries. The record does not disclose when the St. Louis Southwestern Railway Company of Texas was first notified, but on December 12, 1917, shipper's attorney wrote a letter to the claim agent of the St. Louis Southwestern Railway Company at Tyler, Tex., itemizing the damage sustained and reciting that he was replying to such agent's letter and that he had twice theretofore written the latter with reference to the injuries. The claim was not paid, and the shipper instituted suit in the district court in Navarro county, at Corsicana, Tex., on December 27, 1917. At the trial the case was submitted to a jury on special issues and, on its findings, judgment was rendered on April 15, 1921, against the St. Louis Southwestern Railway Company of Texas for $1,000 with 6 per cent. interest per annum from October 24, 1917 (the date of the injury). From such judgment the carrier appeals to this court.

The proof shows that the entire damage occurred to the animals while they were in the custody of the Texas & Pacific Railway Company. If the shipment was interstate, the St. Louis Southwestern Railway Company is liable to the shipper under the provisions of the Cummins Amendment heretofore cited; but if the shipment was intrastate, appellant is not liable, as no part of the injury occurred on its line. To determine the character of the shipment, whether interstate or intrastate, it will be necessary to consider the effect of the issuance of the new bill of lading by the Texas & Pacific Railway Company to the shipper at Big Sandy. If the taking of the new bill of lading was a novation of the original contract, or resulted in a discharge of it, or if the shipment was upon a local instead of a through bill of lading, the transaction would have been intrastate, beginning at Kerens and ending at Big Sandy. And in such the limitation of liability in the bill of lading would have been effective, as delivery of the animals was made by appellant to the Texas & Pacific Railway Company, in the same condition as when received, and without any injury thereto on the line of the St. Louis Southwestern Railway Company of Texas. But if the shipment was on a through bill of lading and no discharge or novation of the contract with appellant resulted, then the transaction was interstate, and appellant is liable.

[1, 2] A novation exists where, by mutual consent and upon sufficient consideration, the parties to an existing contract, intending to extinguish it, substitute therefor a new one, inconsistent with it. Gimble v. King, 43 Tex. Civ. App. 188, 95 S. W. 7. Merely by defining a novation, it becomes apparent that such does not exist in this case. Appellant was not a party to the new bill of lading; nor was there a mutual dissolution of the old contract either expressly or by fact or circumstance that would create such implication. There was no consideration therefor. No benefit accrued to the shipper in taking out the new bill of lading. He only received a drover's pass permitting him to continue his journey, which, under article 731 of the Revised Statutes above quoted, was an insufficient consideration. Nor was a new contract of carriage attempted to be created, inconsistent with the one then existing. It was solely to further carry out the original intention of appellant and appellees at the time the latter delivered the animals to the former at Kerens, with the purpose and agreed understanding that they were to be transported from there to Keithville, Louisiana. G., C. & S. F. Ry Co. v. Hines (Tex. Civ. App.) 239 S. W. 244.

[3] Nor can we conclude that the taking of the new bill of lading operated as a discharge of the original contract for transportation. Such can be effected only by mu-

tual agreement, performance, of operation of law, unless breached or rendered impossible of performance by some fact or circumstance. The record discloses no oral agreement to terminate the contract at Big Sandy, while the testimony of the shipper and the face of the bill of lading show that all parties knew and intended that the animals were destined for Keithville. No breach existed at Big Sandy, and nothing was there to prevent the shipment from continuing. Neither was there a performance, either in fact or in law, as contemplated by the parties at the beginning of the shipment. Had the initial bill of lading provided for carriage from Kerens to Big Sandy only, with no mention of ultimate destination, and had the freight between Kerens and Big Sandy been paid to appellant on arrival at the latter place, it would have constituted an intrastate shipment as to the St. Louis Southwestern Railway Company of Texas, and the taking of the second bill of lading would have been a new and interstate contract with the Texas & Pacific Railway Company. But an inspection of the initial bill of lading shows that the journey was to begin in Texas and end in Louisiana. So does the testimony of the witness W. F. Seale. And the entire freight on the shipment was paid to the Texas & Pacific Railway Company at Keithville, the final destination. This made the St. Louis Southwestern Railway Company of Texas the agent of the Texas & Pacific Railway Company, for delivery to the latter, and made the latter the agent of the St. Louis Southwestern Railway Company of Texas for collections and apportionment of the freight. Such a state of facts shows a through bill of lading and a contract for through transportation from Kerens, Tex., to final destination in Louisiana. G., C. & S. F. Ry. Co. v. Hines, supra; Patterson v. Q., A. & P. Ry. Co. (Tex. Civ. App.) 195 S. W. 1163, and cases cited therein; G., C. & S. F. Ry. Co. v. Vaughn (Tex. Sup.) 16 S. W. 775. There being no discharge or novation of the original contract, and the same being for through shipment on a through bill of lading, the transaction was interstate, and appellant is liable for the injuries sustained. It cannot, by contract or by a clause in the bill of lading, evade or repeal a state or federal statute.

[4, 5] The provision of the bill of lading requiring appellees to give notice of their claim for damages within 120 days as a condition precedent to any right of action thereunder was a reasonable stipulation, and one that the courts will enforce. Revised Statutes, art. 5714; M. N. R. Co. v. Williams (Tex. Civ. App.) 208 S. W. 712. But the facts in this case herein recited show that this clause in the bill of lading was sufficiently and fully complied with by the shipper. Appellant, by its answer denying that notice had been given, placed on appellees the burden of proving it. This burden they endeavored to meet by proffering the best evidence the nature of the case permitted, the written notice itself. Therefore appellant's objection to its contents was properly overruled, especially as the court admitted it for the purpose only of proving that notice was given as required by law and by the bill of lading.

[6, 7] The date from which interest should begin to run on the claim for damages is determined largely from the verdict of the jury. If it appears from such verdict that the sum fixed by the jury is clearly the amount of the damage on the date of the injury, then interest should run from that date; but if the verdict shows that the sum found by the jury was the damage at the time of the finding, or if it is uncertain at what date the damage was the amount found by the jury, then the interest should run from the date of the judgment and not the date of the injury. The jury by their answers to questions Nos. 4 and 5 found that the value of the animals on the date of delivery was $1,500; that it would have been $2,500 if they had arrived in good condition. Therefore it is readily apparent that the judgment of $1,000 was the difference in the value and the extent of the damage on the day of the injury, and interest therefore should run from the date of such injury and not from the date of the judgment. Appellees alleged their damage to be $1,500; their prayer was for interest from the date of delivery; and the finding of the jury was on special issues and not on a general charge. Therefore the judgment of the court awarding interest from the date of the injury was proper. H. & T. C. R. Co. v. Jackson, 62 Tex. 209.

In the light of the foregoing we conclude: That the taking of a second bill of lading in transit from a connecting carrier was not a novation of the existing contract with the initial carrier, nor did it operate as a discharge of such original contract; that the shipment was on a through bill of lading, originating in Texas and ending in Louisiana, therefore interstate in its nature and governed by the provisions of the Cummins Amendment; that the clause in the bill of lading issued by the initial carrier limiting liability to its own line was void as to this shipment, and did not operate to discharge said carrier from liability to the shipper for the amount of the damage sustained, with legal interest from the date of the injuries, although the loss occurred wholly on a connecting line.

Finding no error committed by the trial court, its judgment is here affirmed.