### Bennie Sherow v. The State.

No. 9927.    Delivered January 19, 1927.

**1.—Possessing Intoxicating Liquor—Search and Seizure—Construction of Statute.**

The private residence of appellant was searched by officers without a valid search warrant in February, 1924, and certain liquors, etc., were found on his premises. Appellant was placed upon trial in July, 1925, and evidence of the discovery of incriminating facts, through said unlawful search of his premises, was admitted in evidence against him on his trial.

**2.—Same—Continued.**

The Thirty-ninth Legislature by Chapter 49, amended Title 8, Chapter 7, C. C. P., by adding Art. 787a, which reads as follows: "No evidence obtained by an officer or other person in violation of any provision of the constitution or laws of the state of Texas, or of the United States of

America, shall be admitted in evidence against the accused on the trial of any criminal case." This law was not in effect at the time of the search of appellant's premises, but was in effect at the time of his trial.

#### 3.—Same—Continued.

Appellant's contention, therefore, that Chapter 49 (supra) being a procedure statute, and in force at the time of the trial, operated to exclude evidence obtained by a search illegally made, at a time prior to said statute becoming effective, is sound, and is sustained by this court. See Odenthal v. State, No. 9967, decided January 12, 1927, and numerous other cases cited in this opinion. See also concurring opinion of Presiding Judge Morrow, and dissenting opinion of Judge Lattimore.

#### 4.—Same—Continued.

The express purpose of the legislature in passing Chapter 49, supra, was to change the rule announced by this court in the Welchek case, 93 Tex. Crim. Rep. 271. The right of the legislature to do so is unquestionable. The legislature having changed the rule of evidence, it was available to accused, and operated to exclude the evidence illegally obtained. The trial court having failed to exclude it, it is incumbent on this court to reverse the judgment of conviction.

#### 5.—Same—Verdict and Judgment—Must Respond to Charge of Court.

Where the court submitted two counts in his charge, and the jury returned a general verdict, and the judgment entered condemned the appellant to be guilty of both offenses, this was error. This verdict should not have been received, but the jury should have been told to designate the count on which their verdict was found. After having received the verdict the court should have applied the verdict to some one count, which the evidence supported, and not have undertaken to condemn appellant to be guilty of two separate felonies. See Banks v. State, 93 Tex. Crim. Rep. 117, and other cases cited.

Appeal from the District Court of Rusk County. Tried below before the Hon. R. T. Brown, Judge.

Appeal from a conviction for possessing equipment, etc., penalty one year in the penitentiary.

The opinion states the case.

No brief filed for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

HAWKINS, JUDGE. — This case is pending on motion for rehearing. Being convinced that our former opinion affirming the judgment is erroneous, the same is withdrawn and the present opinion substituted therefor.

Appellant was convicted under an indictment charging in the first count that he unlawfully possessed equipment for the manufacture of intoxicating liquor, and in the second count that he

unlawfully possessed for the purpose of sale such liquor. His punishment was assessed at confinement in the penitentiary for one year.

The transaction out of which this prosecution grew is alleged to have occurred in February, 1924. The evidence shows this to have been the correct date. Three deputy sheriffs had testified that they had a warrant authorizing them to search the residence and premises of appellant, and they detailed before the jury what was found as a result of this search. So far as the record shows the three officers were in good faith, and thought they did have a search warrant. After the deputies had testified it developed from the sheriff that the officers did have a warrant authorizing them to search the premises of one Jones, and that while executing this warrant they received information which led them to believe it would be expedient also to search the premises of appellant, who lived on an adjoining farm, and that he (the sheriff) without any semblance of authority inserted in the search warrant the name of appellant. The officers then proceeded to appellant's premises and without any warrant authorizing it searched his residence and premises. It is not necessary to detail the things found there by the officers, further than to say some incriminating evidence was found in the residence and some near a well about 150 yards from the house. The discoveries made in the house and upon the premises support both counts in the indictment. After it developed upon the trial that the officers had no search warrant appellant requested the court to withdraw from the jury the testimony which had previously been given by the officers as to the result of the search. This motion was overruled, it being clear from the court's explanation to the bill that as the search was made prior to the Acts of the Thirty-ninth Legislature relative to searches and seizures becoming a law, in his opinion the evidence should not be excluded. Under authority of Welchek v. State, 93 Tex. Crim. Rep. 271, 247 S. W. 524, and the many cases following it, the evidence obtained by the officers was admissible unless the law passed by the Thirty-ninth Legislature was available to appellant and defeated the use of such testimony. In Art. 691, P. C., (1925), it is declared that the search of a private dwelling occupied as such is forbidden unless upon a search warrant issued by a magistrate upon the affidavit of two credible persons showing that such residence is a place where intoxicating liquor is sold or manufactured in violation of the law. This article of the statute was enacted in 1919 (2d C. S., p. 238, Sec. 35, 36th Leg.), to give

effect to Art. 1, Sec. 9, of the Bill of Rights, which reads as follows:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing as near as may be, nor without probable cause, supported by oath or affirmation."

The Thirty-ninth Legislature, in Chapter 149, p. 357, enacted a law the first section of which is an exact copy of that clause of the Bill of Rights just quoted.   Sec. 2 of said Act reads:

"It shall be unlawful for any person or peace officer, or state ranger, to search the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law."

(Art. 4a, C. C. P., 1925).   Sec. 3 reads:

"Any person violating any provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be punished by fine of not less than $100 nor more than $500, or by confinement in the county jail not more than six months, or by both such fine and imprisonment."

(Art. 4b, C. C. P., 1925.)

The emergency clause embraced in Sec. 4 of said Act reads in part as follows:

"The fact that the people are not secure in their persons, houses, papers and possessions from unlawful and unreasonable seizures and searches, creates an emergency, etc."

The same legislature (Thirty-ninth), by Chapter 49, amended Title 8, Chap. 7, C. C. P., 1911, by adding Art. 787a, which reads as follows:

"No evidence obtained by an officer or other person in violation of any provision of the constitution or laws of the state of Texas, or of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

The emergency clause of this act, being Section 2 thereof, reads as follows:

"The fact that there has been used against citizens of this state evidence obtained in violation of the constitution of the state, and that there is now no statute expressly forbidding the same, creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days be suspended, and said rule is so suspended, and

that this act shall take effect and be in force from and after its passage, and it is so enacted."

In the Welchek case (supra) it was pointed out that no statute penalized an illegal search. Therefore the opinion was expressed that this court should not penalize such search by rejecting evidence of crime obtained thereby. From the opinion in that case we quote as follows:

"In our judgment, however, the proper decision of the question before us rests on the fact that there is nothing in the constitutional provision inhibiting unreasonable searches and seizures which lays down any rule of evidence with respect to the evidential use of property seized under search without warrant, nor do we think anything in said constitutional provision can be properly construed as laying down such rule. It seems to us that it is going as far as the provision of said constitution demands to admit that one whose property is wrongfully obtained in any manner is entitled to his day in some court of competent jurisdiction and to a hearing of his claim for the restoration of such property, and for the punishment of the trespasser, or the announcement that the citizens may defend against such intrusion; but it must always be borne in mind, if there appear the fact that said property by its physical appearance upon the trial will aid the court in arriving at a correct conclusion in a criminal case, that the owner's right to return thereof should be held in abeyance until said property has served the government—the whole people—by its appearence in testimony. Nor can the rejection of the proffer in testimony of such property be soundly sustained upon the theory that the officer or person who removed such property having evidential value from the house or curtilage of its owner, should be punished for an entry into said premises without search warrant. To reject such evidence for such reason or to completely return same to the owner and relinquish jurisdiction over same would in nowise be a punishment to the officer but would rather be a hurt inflicted upon the people whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence."

Both acts of the Thirty-ninth Legislature just referred to make it clear, we think, that it was the purpose of that body to supply the omission in the law pointed out by the decisions of this court and especially in Welchek v. State, and to change the rule of evidence applied in that opinion and many others.

The Legislature having seen proper to make this change, it is the duty of the court to interpret that law and unless invalid give it effect.

In the absence of constitutional inhibition, the legislature may make an act a crime, whether moral turpitude is involved in the act or not. Ruling Case Law, Vol. 6, p. 156, Missouri v. Berger, 3 L. R. A. (N. S.), p. 530. We are aware of no constitutional inhibition, either express or implied, obstructing the power of the legislature to penalize a peace officer for making a search of the property of a citizen which was forbidden by the constitution of the United States and of the state. Chapter 49, supra, prescribes a rule of evidence. In such an enactment the legislature exercised a right which, by judicial decision, it has often been declared to possess. A pertinent illustration of the authority of the legislature to prescribe rules of evidence as it is attempted in Chapter 49, supra, is found in the enactment of the legislature of this state declaring the possession of more than one quart of intoxicating liquor prima facie evidence that such liquor was possessed for the purpose of sale. This statute has been upheld in Stoneham v. State, 268 S. W. 156, and numerous other cases, and the principle approved by practically all states of the Union as shown by the report of the case of United States v. Lapointe, 31 Am. Law Rep. 1222.

It is likewise illustrated in the statute declaring that a conviction may not be had upon the uncorroborated testimony of an accomplice witness. See Art. 718, C. C. P. 1925, and the exemptions from the operation of the statute last mentioned, whereby the testimony of co-actors and persons criminally connected with violations of the law forbidding the transportation or the possession for the purpose of sale of intoxicating liquors, which has been upheld on numerous occasions. Other instances in which the same principle has been applied are found in the statute declaring the husband and wife incompetent witnesses against each other, and declaring persons charged with the same offense competent witnesses for the state but incompetent for the accused. Many other illustrations might be added. The soundness of the proposition that the legislature was acting within the scope of its authority in declaring evidence obtained by a search forbidden by the constitution of the United States and of the state and by the statutes of the state, could not be received in evidence, seems not open to question. The policy of the law is not a matter for judicial consideration. See Hopt v. People, 110 U. S. 574.

As heretofore stated, the transaction upon which the prose-

cution is based and the search of appellant's premises took place in February, 1924. The Acts of the Legislature (Chapter 149 and 49, supra) became effective in June, 1925. The trial took place in July of the same year. It is contended by the state that the evidence obtained through the search of appellant's dwelling-house and premises was admissible because at the time the search was made the Acts of the Legislature just mentioned were not in force. It is true that at the time of the search there was no penalty attached to the unauthorized act of the officers, but the search of appellant's residence without a search warrant was in violation of the fourth amendment to the constitution of the United States, and of Section 9 of Article 1 of the state constitution, which expressly forbids unreasonable searches and seizures, and of Section 35, Chapter 78, Acts of the Thirty-sixth Legislature, 1919, and carried forward as Article 691, P. C., revision of 1925, in which the search of a private dwelling exclusively used as such is forbidden except upon a warrant issued by a magistrate upon probable cause shown by the affidavit of two credible persons. Appellant's contention, therefore, that Chapter 49 (supra) being a procedure statute in force at the time of the trial, operated to exclude evidence obtained by a search illegally made at a time prior to the statute becoming effective, is sound. The question is discussed at length in Odenthal v. State, decided January 12, 1927 (No. 9967). The authorities are again collated here for convenience. Ruling Case Law, Vol. 25, p. 791, Sec. 38; Underhill's Crim. Ev., 3rd Ed., Sec. 11; Hopt v. Utah, 110 U. S. 574, 28 L. Ed. 262; Mallett v. N. C., 181 U. S. 594, 45 L. Ed. 1018; Rose's Notes on U. S. Rep., Vol. 12, Rev. Ed., p. 415; Mrous v. State, 31 Tex. Cr. Rep. 600; Askew v. State, 127 S. W. 1037; James v. State, 163 S. W. 61; McInturf v. State, 20 Tex. Cr. App. 355; Blount v. State, 31 S. W. 652; Wright v. State, 163 S. W. 976; Barnett v. State, 42 Tex. Crim. Rep. 306; Ybarra v. State, 164 S. W. 10; Thompson v. State, 42 S. W. 949.

In searching the residence of appellant, the officers who testified against him acted without the semblance of right or authority. The search was contrary to the express prohibition in Art. 691, P. C. 1925, which was in effect at the time the search was made, and was also opposed to the constitutional inhibition against unreasonable search and seizure. Under the rule applied in the Welchek case, 93 Tex. Crim. Rep. 271, the testimony would have been properly received. The express purpose of the legislature in passing Chapter 49, supra, was to change the rule applied by this court in the Welchek case, supra. The right

of the legislature to do so is unquestionable. The precedents to that effect are without conflict. The legislature having, by constitutional methods, changed the rule of evidence, it was available to accused and operated to exclude the evidence illegally obtained. Obedience to the statute required its exclusion. The trial court having failed to exclude it, it is incumbent upon this court, in the discharge of its duty, to reverse the judgment of conviction to the end that accused may be tried in accord with, the written law of the land.

No complaint is made of the matter now to be discussed, but we deem it proper to call attention to it. The court submitted both counts of the indictment, instructing the jury to state in their verdict under which, if either, they convicted. The jury ignored this instruction and returned a general verdict of guilty. Judgment was entered condemning appellant to be guilty of both offenses charged. The sentence follows the judgment. The learned trial judge should not have received the verdict after having instructed the jury to designate the count, but having received it, he should have applied the verdict to some one count which the evidence supported and not have undertaken by a single judgment to condemn appellant to be guilty of two separate felonies. Banks v. State, 93 Tex. Crim. Rep. 117, 246 S. W. 377; Knott v. State, 93 Tex. Crim. Rep. 239, 247 S. W. 520; Reyna v. State, 96 Tex. Crim. Rep. 320, 247 S. W. 883. It being necessary to reverse the case for the other matters discussed, this question is only adverted to in order that the complication might not arise in the event of another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### CONCURRING OPINION.

MORROW, Presiding Judge.—According to the witness, Wellborn, a deputy sheriff, he went to the home of the appellant in company with George Hays, the sheriff, and Deputies Sam Gault and Walker Green. The witness said, in substance, that they went to the dwelling house of the appellant and made known to him that they had a search warrant to search his premises; that they went inside of his house through the front door, and just inside behind the door he had four or five jugs tied together with a wire, which jugs had been freshly washed. They were in his dwelling house. The stove room and kitchen were searched, as was the smokehouse, in which were found some jars freshly washed. The officers climbed up into the loft of the kitchen, where they found two sacks of sugar which had on the sacks the

words "meal" and a piece of a sack of sugar. The sheriff had a search warrant which had been issued by the County Judge of Rusk County. The sheriff offered to read the warrant, but the appellant told him to go ahead and search.

Gault, another deputy, who was in company with Hays, Wellborn and Green, stated that they made a search of the appellant's premises; that in his house they found a number of jugs and fruit jars freshly washed, and about 250 yards back of the house in a field they found two stills, which were on a little furnace which was still warm; that near the house they found two barrels of mash. Gault also testified that they found some whiskey between the house and a well about 150 yards from the house. Similar testimony was given by Green.

Appellant testified that he owned an interest in and lived on the place, but disclaimed the ownership or knowledge of the whiskey or the stills. According to his testimony, the stills were not on the land enclosed by his premises and did not belong to him. He claimed that the article found in the kitchen loft was flour and not meal; that the jars had been washed by his wife after finishing making some preserves. The trail described by the officers which led towards the place where the stills were found also led to the well and was used by the appellant in working his land. It was shown that some negroes lived in the community, some of them not much farther from the stills than the appellant.

The sheriff testified that he had a warrant to search the place of Laura Jones, but had no search warrant to search the place of the appellant; that after searching Laura Jones' place, he added Sherow's name to the search warrant; that while searching Laura Jones' place, she told him about Sherow and other negroes. The sheriff said:

"I searched Laura Jones' place and found a bear sign; then she told me about Bennie Sherow and the other negroes, and I just added his name in the warrant I already had for her place."

From bill of exceptions No. 1 it appears that the state introduced Wellborn, Gault and Green as witnesses; that all of them testified that they were deputy sheriffs and that in pursuance of their duties as officers they searched the premises of Bennie Sherow on the 28th of February, 1924; that they operated under a search warrant issued by the County Judge of Rusk County; that George Hays, Sheriff of Rusk County, was with them at the time; that the sheriff had a search warrant. The bill further shows that after these witnesses had testified, the sheriff was called to the witness stand and testified that he did not have

a search warrant issued by the County Judge of Rusk County to search the premises of Bennie Sherow, but did have a warrant issued by said County Judge to search the premises of Laura Jones; that after finding mash, etc., on her premises and being told by her that there was whiskey on the premises of Bennie Sherow, the sheriff, George Hays, then, of his own accord, inserted the name of the appellant, Bennie Sherow, in the search warrant; that then the officers went upon the premises of the appellant and made a search for whiskey, mash and still. The bill also shows that after the sheriff had testified as last above stated, the appellant, in open court and before the jury was instructed, moved and requested the court to strike out and withdraw the testimony given on the trial by the witnesses Wellborn, Gault and Green for the reason that such testimony was procured by virtue of, and under an illegal search warrant and was not proper and competent on legal testimony before the jury. This motion the court overruled. Appellant reserved a bill of exceptions which was allowed by the court without qualification save that the search was made at a date anterior to September 16, 1925, at a time when the search and seizure law was not effective. The same matter as that stated above was brought before the court in the motion for new trial, all of which appears in a second bill of exceptions which was approved without qualification save with the statement that the search was made prior to the enactment of the search and seizure law by the Thirty-ninth Legislature.

In holding that the search warrant law enacted by the Thirty-ninth Legislature, Chapters 49 and 149, did not operate upon the transaction, the learned trial judge was in error. The trial was had after the law, declaring that evidence obtained through an unlawful search could not be used upon the trial, became effective, and under it evidence obtained through an illegal search was not admissible. A discussion of this matter is permitted for the reason that it is further reviewed in other cases as well as in the original opinion on this appeal.

From what has been said it is obvious that at the time that the appellant's dwelling-house, his smokehouse, and the yard surrounding his house, were searched by the officers who testified and who were named in the bill of exceptions, there had been issued no search warrant authorizing them to search any of the appellant's premises. According to the undisputed testimony coming from the state's witnesses, the sheriff had told the appellant that he had a search warrant, issued by the County Judge of Rusk County, to search the appellant's dwelling. This was

not true. The sheriff, without semblance of authority or right, had written, over the signature of the judge who issued the search warrant against another person and property, the name of the appellant. When this was ascertained, the appellant moved the court, in a timely and proper manner, to withdraw from the jury the testimony which had been given by the officers named. It seems from the qualifications of the court that he overruled this motion upon the theory that the search warrant was not necessary. Upon this appeal, the action of the searching officers in perpetrating the fraud is not denied but it was insisted that the bill of exceptions does not make known to this court enough of the facts to warrant it in reviewing the action of the trial court in allowing the state to convict the appellant upon the testimony which was given to the jury by the officers who imposed upon both the court and the appellant and made the fraudulent alterations of a public document.

In Art. 667, C. C. P., 1925, which is brought forward without change, it is declared that the rules prescribed in the civil statutes govern the bills of exceptions in criminal statutes. The rules in the civil statutes, prescribed in Article 2237, are to the effect that one dissatisfied with any ruling of the trial court may take an exception thereto, which shall be reduced to writing, and when approved by the trial judge, shall become a part of the record to guide the reviewing court in passing upon the correctness of the ruling. Subdivisions Nos. 1, 2 and 4 are here reproduced:

"1. No particular form of words shall be required in a bill of exception; but the objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain, and no more, and the whole as briefly as possible."

"2. Where the statement of facts contains all the evidence requisite to explain the bill of exception evidence need not be set out in the bill; but it shall be sufficient to refer to the same as it appears in the statement of facts."

"4. Where the ruling or other action of the court appears otherwise of record, no bill shall be necessary to reserve an exception thereto."

Practically all matters calling for review are presented in this court by bills of exceptions, and the announcement of the court touching their sufficiency to present supposed errors in a manner to demand consideration is a matter of daily occurrence. A general statement touching the form, requisites and sufficiency of bills of exceptions are set out in Vernon's Tex. Crim. Proc., 1925,

p. 364.  The notes under Art. 667, P. C., 1925, embrace many expressions of the court touching the requisites of a bill, as well as their application to the particular bill of exceptions under consideration.  It is the effort of the court in this and in all cases to apply the rules authorized under the statutes mentioned (Art. 2237) to the facts in each particular instance.  The court has ever been insistent in demanding that a bill of exceptions should not be lacking in the essential requisites which go to show the nature of the ruling of the trial court of which complaint is made; that the ruling was made over appropriate objection; that its effect was prejudicial to the rights of the accused on trial.  On appeal, the presumption prevails that the ruling of the court was right, or that it was harmless, unless the contrary appear from the bill of exceptions.  In other words, one claiming that his rights are prejudiced by an erroneous ruling must present a bill of exceptions from which this court will be able to ascertain that the complaint is just.  In each case, the substance, and not the shadow, is the thing sought, and the administration of justice according to law is the object.  "Rules of procedure are made to facilitate, not to obstruct the administration of justice, and it has been the practice of the courts of this state, in deciding questions as to the sufficiency of bills of exceptions, to bear in mind and apply this principle."  Williams v. State, 89 Tex. Crim. Rep. 339; Railway v. Pemberton, 106 Tex. Rep. 468; Farrar v. State, 29 Tex. Crim. App. 253; Stanton v. State, 42 Tex. Crim. Rep. 271; Robinson v. State, 70 Tex. Crim. Rep. 81; Plummer v. State, 86 Tex. Crim. Rep. 493.  In Plummer's case, supra, in which the original opinion was written by our brother, Lattimore, is a notable example.

In a criminal case, the reading by this court of the statement of facts, if there be one, is an essential predicate to an affirmance of the judgment.  This court has always been called upon, before affirming a case, to determine the sufficiency of the evidence.  In the present case, however, aside from the statement of facts, we learn from the bills of exceptions that the sheriff and his three deputies, having in their possession what purported to be a warrant to search the appellant's premises, but which was not, and by telling him that they had a warrant to make the search, did search the premises and did testify to the result of the search; and that the court, after learning of the deception, refused to exclude the testimony.  The bill of exceptions would have been fuller if it had embraced a statement of all the facts to which the witnesses named therein had given testimony.  However, tested by the most restrictive rule, it does appear

that the sheriff and his deputies searched the premises of the appellant; that they did so in violation of a statute which forbids a search without a warrant upon the pretense that they had a warrant. To the writer it seems obvious that the court should have granted the appellant's request to withdraw the testimony which the bill shows was given by the witnesses mentioned.

In his motion for new trial, appellant set up all the facts showing that the illegal search had been made and verified them by a separate affidavit. That is, he set up the matters set out in the bill of exceptions showing that the officers searched his premises and illegally gave testimony obtained thereby against him. In considering the motion for new trial the trial judge had before him all the facts adduced upon the trial. It was his privilege, as well as his duty, to consider all the evidence heard upon the trial in order to measure the effect of his erroneous ruling and the illegal conduct of the sheriff and his deputies. At the time he passed upon the motion for new trial, he knew that the deputies mentioned had testified to evidence which they had obtained in searching the appellant's private dwelling; that they had claimed to have found there articles, which they described, usable in the manufacture of whiskey; that they had found jugs and jars which were in a condition to arouse suspicion against the appellant touching the manufacture of intoxicating liquor; that they found whiskey about 150 yards from his dwelling-house, but whether on his land or not is not made clear. It was also known to the trial judge that the appellant had testified that the stills which the officers claimed to have found some 250 or 300 yards from the appellant's premises were not on his premises and that concerning them he knew nothing; that numerous other negroes lived nearby. This was not controverted, but the proximity of the stills was a damaging circumstance against the appellant, and the evidence found by the officers in searching his dwelling was doubtless used by the jury in contradiction of the claim of the appellant that the still did not belong to him. These things the learned trial judge was bound to know because he had heard the testimony. He was also bound to know that he had been misled, both as to the law and the fact, when he received the testimony.

In the opinion of the writer, from the whole record, the court was not warranted in refusing to grant the motion for new trial. I, therefore, concur in the opinion of Judge Hawkins that the due administration of justice demands a reversal of the judgment of conviction rendered under the circumstances.

DISSENTING OPINION.

LATTIMORE, JUDGE.—My brethren are reversing this case. I cannot agree to the reversal. My reasons follow. A statement of the facts is necessary in order that my reasons for this dissent may be thoroughly understood.

Appellant is a negro, and about a quarter of a mile from his house lived his brother, and in the community were other negro houses. Officers went to the home of Laura Jones on the morning of this occurrence, and had a search warrant to search her place. She told them that there was whiskey at appellant's place. The sheriff then wrote appellant's name in the search warrant which he had to search the place of Laura Jones. Whether this fact was known to the other officers does not appear. The party then went from Laura Jones' place to that of appellant. In his house they found some jugs tied together, freshly washed. No one asserted there was any odor or appearance of liquor about the jugs. Near appellant's smokehouse were found some fruit jars, also freshly washed. No one said there was any appearance or odor of liquor about these. On planks laid on rafters in appellant's kitchen the officers found two 35-pound sacks of meal and part of a sack of sugar. I have enumerated all that was found in the house or yard of appellant.

When the officers reached appellant's house he was observed coming from the direction of a well several hundred yards from his house. A trail led from the house to the well. Later, between the house and the well, at a point estimated at one hundred and fifty yards from appellant's house, nine gallons of whiskey were found near a stump. In a nearby branch the officers found two stills stated to be something like two hundred and fifty or three hundred yards from appellant's house and not far from the well. At no great distance from the stills were two barrels of mash. A trail, stated in testimony to be well beaten, led from appellant's house to the stills. Shortly after, seeing appellant down near the well, his wife was observed coming from where the stills were found with a bucket in her hand. There can be no dispute of these facts.

The state introduced in making out its case three deputy sheriffs who testified without objection that having a search warrant they searched appellant's house and found the jugs, jars, meal and sugar above referred to, also that they saw the trails mentioned, and saw appellant and his wife coming from the directions mentioned, and that they went down to the well

and branch and found the whiskey, worm, mash and stills. They said the stills were three or four feet apart, each on a furnace, and were warm when found. After the introduction of said officers the state rested its case. Appellant then took the stand and denied owning or controlling the ground upon which the stills, whiskey, etc., were located when found. He said he bought his supplies through a Farmers' Union and got them in quantities because cheaper; also that he put the meal (which he said was flour) and sugar upon the rafters to keep same from the rats. He also testified that his wife had been making preserves and that the fruit jars referred to were for use in that connection.

After appellant had concluded his testimony his attorneys placed the sheriff on the stand and he testified for the defense to the fact that he inserted appellant's name in the search warrant which he had authorizing him to search the place of Laura Jones. From bill of exceptions No. 1 it appears that at this point appellant made a motion from which I quote as follows:

"To strike out and withdraw all of the testimony given in this trial by the witnesses C. V. Wellborn, Sam Gault and J. W. Green, for the reason that said testimony was procured by virtue of and under an illegal 'search warrant,' and was not proper and competent and legal testimony to go before the jury; whereupon the court overruled said motion."

Asserting that the refusal of this motion was error, my brethren reverse this case. To me nothing can be plainer than that the refusal of said motion was correct, and is in line with all our precedents and rules as well as what seems to be reason and justice.

It is true the sheriff wrongfully inserted appellant's name in the search warrant, but this could only taint those things thereafter done under said warrant, *for which a search warrant was necessary*. To illustrate: If after wrongfully inserting appellant's name in the search warrant the sheriff had met the latter in the road with a pistol on his person, it would seem idle to contend that the officers could not testify to the unlawful carriage of the pistol, and the finding of same upon the person of appellant. The matter seems too plain for argument. If after wrongfully inserting appellant's name in said warrant the officers on their way to his house, while going through a pasture, had discovered a still being operated by appellant, it would not be contended that the error of the insertion of his name could be stretched to make inadmissible his presence at and operation of said still, on his trial for such operation. Precisely analogous and for the same reason appellant had no sort of

right to have stricken out the testimony of the finding of the whiskey, stills, worm, etc., which he did not claim were on land owned or controlled by him.

Appellant's motion to strike out the testimony must be based on Articles 4a and 727a of the 1925 C. C. P., both of whch were enacted by the Thirty-ninth Legislature. Article 4a forbids search without warrant of the private residence, actual place of habitation, place of business, person or personal possessions. Article 727a declares inadmissible evidence obtained in violation of law. It is well settled that he who interposes objection must support it by a showing of facts as well as making the objection. In this case not only does the record manifest an entire lack of showing in the bill of exceptions of the fact that the whiskey, mash, worm, stills, etc., were found in or on appellant's private residence, actual place of habitation, place of business, etc., but the further fact appears that he himself swore to the contrary.

I revert to the legal propositions. The motion to strike out *all the testimony of the officers* was clearly wrong because it embraced the exclusion of their testimony as to the finding of the whiskey, stills, mash, worm, etc., also their testimony as to seeing the trail leading from appellant's house to the stills, also the fact that appellant and his wife were seen coming from the direction where the stills, etc., were found, all of which testimony just enumerated would have been admissible if the officers had had no search warrant, or had had a search warrant which for any reason was illegal. In an appellate court such as this we always try to follow precedents as long as we believe them to be right. What I have just said is in line with what my Brother Hawkins quoted with approval in Vaughn v. State, 280 S. W. 772, which is as follows:

"A bill of exceptions is too general to be considered if it includes a number of statements some of which are clearly admissible, and there is nothing in the objection to directly challenge or single out the supposed objectionable evidence. Branch's Ann. Tex. P. C., Sec. 211."

See also Payton v. State, 35 Tex. Crim. Rep. 510; Gaines v. State, 37 S. W. 333; Tubb v. State, 55 Tex. Crim. Rep. 623; Bing v. State, 280 S. W. 827. Certainly we have no better settled rule than that one who presents a motion or makes an objection must so present same as that the trial court will have the very point of the matter before him; and as the matter was presented to him, so must it be brought here, and it must appear from the bill of exceptions before us that there was an error

in the ruling complained of. This is recently discussed in Stanford v. State, 280 S. W. 798, my Brother Hawkins writing the opinion on rehearing. The same principle is involved in all those cases in which we have held that from the bill itself this court must be able to determine whether the matter objected to was erroneous or otherwise. Hennessy v. State, 23 Tex. Crim. App. 355; Huffman v. State, 28 Tex. Crim. App. 177; Wright v. State, 36 Tex. Crim. Rep. 36; Burt v. State, 38 Tex. Crim. Rep. 397; Kelley v. State, 43 Tex. Crim. Rep. 44. As said by my Brother Hawkins in Raglin v. State, 284 S.. W. 548:

"A bill should be made so full and certain in its statements as that in and of itself it will disclose all that may be necessary to manifest the supposed error. See Section 207, Branch's Ann. Tex. P. C. The bills do not comply with this requirement, and we must presume the learned trial judge was correct in the ruling made."

And as said by my Brother Morrow in Banks v. State, 282 S. W. 226:

"To require consideration, it is essential that the bill of exceptions be self-explanatory to a degree that will enable the court to determine from the bill alone whether in the ruling of which complaint is made error was committed.

My Brother Morrow cites many authorities in support of this proposition. As a matter of fact, I know of none in all the books to the contrary.

We also adhere uniformly to the rule that our presumption here must be in favor of the correctness of the ruling of the trial court until and unless the contrary is affirmatively shown, and when the complaint in question appears in a bill of exceptions, the showing of the error must be in the bill itself, which must state enough facts to manifest the error of the ruling excepted to. Cordova v. State, 6 Tex. Crim. App. 447; White v. State, 9 Tex. Crim. App. 42; Ballinger v. State, 11 Tex. Crim. App. 334.

I make a brief recapitulation. There was before the trial court testimony as to some things found in appellant's house which, upon proper objection, should have been stricken out, such as the finding of the jugs, meal and sugar in appellant's house. From the same witnesses there was also testimony of the finding of the whiskey, a worm, mash, stills, trails and appellant's and his wife's movements in coming from the direction of the stills which were not on his land (according to his testimoney), which testimony should not have been excluded because same was admissible whether the officers had a search warrant

or not. With all this testimony before the trial court, appellant moved to exclude *all the testimony of said witnesses*, for the sole reason that the search warrant was illegal. The trial court refused to grant the motion. For this my brethren reverse. I emphatically decline to reverse, holding that had appellant moved to exclude testimony only of what was found in the house, the motion would have been good and its refusal error; but that when he moved to exclude all the testimony of said officers his motion was not good because it comes clearly within the rules and said motion embraced material testimony whose admissibility was not in the least affected by the legality vel non of the search warrant. Because nothing in the motion, quoted above, points out or specifies the objection of appellant as being directed to those things found in his house, I am constrained to hold the action of the trial court correct. Also looking to appellant's bill of exceptions, I am constrained to hold, as it seems to me this court has always held, that such bill must state the facts relied on to manifest the error complained of, and I here further observe that said bill under discussion only sets up that the officers testified that they searched appellant's premises, and that the bill makes no reference as to what the officers found, if anything, or where they found it. This being true, I again state to hold such bill good is plainly obnoxious to all the rules referred to. I am unable to see how the trial court in the first instance, or this court on appeal, could know what appellant moved to strike out. To me it appears both that the trial court from the motion presented, and this court from the bill of exceptions appearing in the record, are left wholly in the dark. The trial court knew from the motion that they wanted him to strike out the testimony of the officers that they searched appellant's premises. This court knows from the bill of exceptions that they complained of the action of the court below in refusing to strike out the testimony of the officers that they searched his premises. If we adhere to the rule that the trial court obtained from said motion his knowledge of what testimony appellant referred to therein, and that this court obtained its knowledge of the same matter from the bill of exceptions, I again assert that neither court could know what testimony was referred to or that the same was erroneously obtained. The question might arise as to what was meant in the motion and bill of exceptions by the use of the word "premises." We said in Smith v. State, 99 Tex. Crim. Rep. 114, that the word was so vague and indefinite as that a statute using same was obnoxious to our constitutional require-

ment that a statute be plain and definite. I further observe that in one part of said motion it is stated that the officers swore they searched the premises of appellant, and in another part of said motion that appellant moved the court to strike out all the testimony of said officers. The trial court's duty was to pass on the motion as presented, and this court's duty was to pass on the bill of exceptions as presented, and the trial court ruled correctly, and if for what appears in said bill of exceptions this court reverses, in my opinion we are gravely in error.

There is but one other bill of exceptions which was taken merely to the overruling of appellant's motion for new trial. Said motion was sworn to, but complains only of the insufficiency of the testimony and the supposed error of the court in refusing the motion to strike out the testimony which I have been discussing. Said motion derived not one jot or tittle or advantage by being sworn to, and unless there was error in the overruling of appellant's motion to strike out, manifested by the bill of exceptions which I have discussed,—or unless the evidence be insufficient, there is nothing further to discuss.

As to the sufficiency of the testimony, it would be easy to cite numerous cases where this court has held that upon proof of the finding of a still, liquor, etc., on premises not owned or controlled by the accused, convictions have been upheld. Gault v. State, 99 Tex. Crim. Rep. 360; Washburn v. State, 98 Tex. Crim. Rep. 37; Tarver v. State, 103 Tex. Crim. Rep. 611; Buchanan v. State, 104 Tex. Crim. Rep. 612. It appears from the record in this case, omitting reference to what was found in appellant's house, that there was evidence before the jury, plainly competent and relevant, irrespective of the search warrant issue, that appellant and his wife were seen coming from the place where presently were found two stills yet warm. That near by were two barrels of mash and nine gallons of whiskey, and to which stills a well-beaten path led from appellant's house. In the light of what seems to me to be the holdings of this court in many cases, I am unwilling to commit myself to the proposition that this testimony, aside from what was found in appellant's house, did not justify his conviction. No other questions are raised. No other issues are before this court.

Being entirely unable to agree with my brethren in their reversal, I respectfully record my dissent.